IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN  DIVISION

| | |
|---|---|
| BAYMARK HEALTH SERVICES OF OHIO, INC.,  )<br>1720 Lakepointe Drive, Suite 117  )<br>Lewisville, TX 75057,  )<br>  )<br>and  )<br>  )<br>  )<br>MKB HOLDINGS, LLC,  )<br>3659 Green Road, Suite 214  )<br>Cleveland, OH 44122,  )<br>  )<br>Plaintiffs,  )<br>  )<br>v.  )<br>  )<br>CITY OF PARMA HEIGHTS, OHIO,  )<br>6281 Pearl Road  )<br>Parma Heights, OH 44130,  )<br>  )<br>and  )<br>  )<br>CITY OF PARMA HEIGHTS PLANNING  )<br>COMMISSION,  )<br>6281 Pearl Road  )<br>Parma Heights, OH 44130,  )<br>  )<br>and  )<br>  )<br>DENNIS PATTEN, in his official capacity as  )<br>CITY OF PARMA HEIGHTS DIRECTOR OF  )<br>PUBLIC SERVICE,  )<br>6281 Pearl Road  )<br>Parma Heights, OH 44130,  )<br>  )<br>Defendants.  ) | Civil Action No. 1:20-cv-2754<br><br>Judge: _____<br><br>Magistrate Judge: _____<br><br><br>**JURY DEMAND ENDORSED<br>HEREON** |

## **COMPLAINT**

Plaintiffs BayMark Health Services of Ohio, Inc. ("BayMark") and MKB Holdings,

LLC (together, "Plaintiffs"), for their Complaint against Defendants City of Parma Heights,

1

Ohio (the "City"), the City of Parma Heights Planning Commission (the "Planning Commission"), and Dennis Patten in his official capacity as the City's Director of Public Service (the "Director") (collectively, "Defendants" or "Parma Heights") aver and allege:

## I.  INTRODUCTION

1.      Nearly every American has experienced the impact of the opioid crisis.  Its effects have had a devastating impact across Ohio, recognized as "ground-zero for opioid overdose deaths" in the United States.[1]  Opioid Use Disorder ("OUD") exists in nearly every Ohio community, particularly in Cuyahoga County and Parma Heights.

2.      The number of overdose deaths in Cuyahoga County surged in 2020 and is on pace to be the highest number of such deaths in three years.[2]  Heroin, fentanyl, and other opioids have been, and continue to be, the leading cause of overdose deaths in Cuyahoga County.[3]

3.      In response to the significant unmet need for OUD services in Parma Heights and its surrounding area, BayMark has sought to open an opioid treatment office (also known as a methadone treatment office) in Parma Heights that will provide medication assisted treatments primarily utilizing methadone and buprenorphine, along with counseling and recovery services, to provide comprehensive, evidence-based

---

[1] Courtney Astolfi, *Report: Ohio Ground-Zero for Opioid Overdose Deaths*, THE PLAIN DEALER, (Nov. 30, 2016),  https://www.cleveland.com/metro/2016/11/report_ohio_ground-zero_for_op.html ("Ohio saw more opioid overdose deaths than anywhere else in the nation").

[2] Evan MacDonald, *Cuyahoga County Sees 19 Drug Overdose Deaths in a Week, on Pace for Highest Total in Three Years*, THE PLAIN DEALER, (Oct. 13, 2020), https://www.cleveland.com/metro/2020/10/cuyahoga-county-sees-19-drug-overdose-deaths-in-a-week-on-pace-for-highest-total-in-three-years.html.

[3] Dr. Thomas P. Gilson, *Cuyahoga County Medical Examiner's Office Heroin/Fentanyl/Cocaine Related Deaths in Cuyahoga County*, (Oct. 9, 2020) http://medicalexaminer.cuyahogacounty.us/pdf_medicalexaminer/en-US/HeroinFentanylReports/SEP2020-HeroinFentanylReport.pdf.

treatment for individuals with OUD.

4.      Methadone is prescribed to reduce or eliminate chronic opioid addiction while the client is provided a comprehensive range of treatment.  Methadone is a long-acting synthetic narcotic analgesic that is administered in sustained, stable, medically determined dosage levels for periods in excess of 21 days.  Among other things, methadone blocks the opiate receptor in the brain.  This means that if someone on a methadone treatment were to also use an opiate, the individual will not typically feel a "high" from the opiate.  In short, the methadone stabilizes someone suffering from OUD by providing a "maintenance dose" of opioids, allowing the individual to avoid withdrawal symptoms and pursue a healthy lifestyle without opioid cravings leading to relapse.

5.      During the course of the methadone treatments, clients suffering from OUD also receive a range of other outpatient services.  These services habilitate and rehabilitate clients with OUD to a basic level of social, life, work, and health capabilities that help them become productive, independent members of society.  Services include replacement therapy, evaluation of medical, employment, alcohol, criminal, and psychological problems, screening for diseases that are disproportionately represented in the opioid-abusing population, monitoring for illicit drug use, counseling by addiction counselors that are evaluated through ongoing supervision, and professional medical, social work, and mental health services either on-site or by referral.

6.      Unfortunately for those suffering from OUD in and around Parma Heights, the City has arbitrarily and unlawfully prevented BayMark from providing these much-needed services.

7.     The City has continuously – over the course of years – refused to issue a final decision on BayMark's pending zoning applications.  Without any legitimate basis, the City has arbitrarily and capriciously refused to recognize that BayMark's opioid treatment office is a "commercial business," an expressly permitted use of BayMark's property.  Likewise, the City has arbitrarily and capriciously refused to approve BayMark's site plan, even though it meets all of the requirements set forth in the City's Zoning Code.  It is now clear that while the City is refusing to act upon BayMark's pending applications and that the City is going to impose new zoning restrictions on use of the property and prohibit BayMark from operating an opioid treatment office on the property.

8.     Rather than objectively applying its Zoning Code to approve BayMark's operation of an opioid treatment office, the City has discriminated against and is continuing to discriminate against BayMark based on unsubstantiated fears and stigma against BayMark and its clients' OUD disabilities.

9.     The City's arbitrary refusal to permit BayMark to open its opioid treatment office has led to overdose deaths that could have been prevented.  Meanwhile, BayMark has lost significant sums during the City's arbitrary delays.  BayMark therefore seeks injunctive, monetary, and declaratory relief for the City's violation of the Americans with Disabilities Act, the Rehabilitation Act, the United States and Ohio Constitutions, and the City's own Zoning Code.

## II.    JURISDICTION AND VENUE

10.    This action arises under the United States Constitution, the Ohio Constitution, and laws of the United States.

11.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343(a), 1367, and 2201.

12.     Venue in this Court is proper under 28 U.S.C. § 1391(b) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

13.     Additionally, further recourse to state procedures would be futile, and/or a final decision is not required by existing law.

### III.  PARTIES

14.     BayMark is a corporation organized under the laws of the State of Ohio with its principal place of business in Lewisville, Texas.  BayMark has leased a portion of the property located at 6700 Pearl Road in the City of Parma Heights, Ohio (the "Property") for purposes of operating an opioid treatment office.  BayMark sues on behalf of itself and on account of injuries it has suffered and will continue to suffer due to its association with persons with disabilities.

15.     MKB Holdings, LLC ("MKB") is a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Cleveland, Ohio.   MKB purchased the Property in 2014 and subsequently leased a portion of the Property to BayMark.

16.     The City is a chartered municipal corporation and body politic operating under the laws of the State of Ohio and is situated within Cuyahoga County, Ohio.   Upon information and belief, the City receives and distributes money from the federal government for its programs and activities.

17.     Dennis Patten is the current Director of Public Service of the City of Parma

Heights and is named in his official capacity.

18.     The City acts by and through various commissions and public officials including the Planning Commission and the Director.

## IV.  FACTS COMMON TO ALL CLAIMS

### A.    BayMark Is the Largest Opioid Treatment Program Provider in North America.

19.     Previous narcotic addiction, including OUD, is a disability with severe medical, emotional, and societal consequences.  Persons receiving medically supervised methadone treatment are not capable of performing major life activities without the assistance and support provided by methadone treatment programs or other approved treatment modalities.

20.     Society incorrectly views recovering narcotic addicts, including persons suffering from OUD, as damaged individuals, incapable of leading ordinary, productive lives.  Society stigmatizes previous illegal drug users and recovering drug addicts.  Many people and institutions retain prejudices against former illegal drug users, including against individuals suffering from OUD.

21.     BayMark provides counseling and recovery services to individuals suffering from OUD.  BayMark, including its affiliates, has operated in this capacity for over forty years and is the largest opioid treatment program provider in North America. BayMark and its affiliates currently operate and/or support 274 locations throughout the United States and Canada, including offices throughout Ohio.  BayMark has a reputation for treating individuals with OUD, treating more than 57,000 individuals each day across its locations.

22.     BayMark's treatment offices are regulated by the federal Substance Abuse and Mental Health Services Administration ("SAMHSA") and the federal Drug

Enforcement Agency ("DEA").  BayMark's opioid treatment offices are licensed by the State of Ohio, certified by SAMSHA, and registered with the DEA.

23.     BayMark's opioid treatment programs are operated through local offices that target chronic opioid users who have failed to respond to other types of treatment. BayMark screens each new client to ensure that he or she has a history of opiate or narcotic addiction.  BayMark's clients' addictions impair their lives in numerous ways, such as interfering with their employability, parenting, regular life functions, social interactions with others, taking care of themselves, and ability to stay out of jail.

24.     BayMark utilizes a multi-disciplinary approach to treating clients with OUD, addressing the physical and psychological aspects of their addiction through medication assisted treatments utilizing drugs such as methadone, buprenorphine, and vivitrol.  BayMark also provides health assessments, individual and group counseling, addiction education and relapse prevention, mental health services, case management, and referrals to community resources, all on an outpatient basis at its treatment offices. BayMark's treatment offices are for-profit, commercial businesses.

25.     BayMark treats every client under the supervision of licensed physicians and licensed nurse practitioners; methadone is administered by licensed nursing staff. Each office has a physician medical director.

26.     Some clients pay for methadone treatment out of pocket, some are covered by Medicaid, some by other public funding, and some by insurance.

27.     Unfortunately, there is not a magic cure for OUD.  Individuals with OUD are susceptible to instances of relapse.  It can therefore take years of effective treatment to cure someone with OUD.

7

28.     There is a significant number of individuals who live in and around Parma Heights suffering from OUD.  There are only a couple of public offices providing methadone maintenance treatment in Cuyahoga County, which are located in downtown Cleveland.  There currently exists an unmet need for opioid treatment programs offered by BayMark in and around Parma Heights.

**B.     BayMark Leases the Property to Meet the Needs of an Underserved Community.**

29.     On or about September 29, 2017, BayMark entered into a lease agreement (the "Lease") with MKB.  The Lease is for seventeen (17) years, whereby MKB agreed to lease the Property to BayMark for the operation of an opioid treatment office.

30.     The Property is located on the north side of Pearl Road near the intersection with West 130th Street.  The Property is approximately 80 feet wide by 150 feet deep and is improved with a commercial building of approximately 6,000 gross square feet that has sat vacant for approximately 8 years and continues to sit vacant.



31.     The Property is located in the City's Class "C" Commercial Zoning District.

32.     The uses permitted in the Class "C" Commercial Zoning District include

any "**commercial business** not injurious to adjacent premises or its occupants thereof by reason of the emission of dust, fumes, smoke, odor, noise, vibration or danger to life, property, safety or health."  Parma Heights Zoning Code ("Zoning Code") §1181.01(d) (emphasis added), a true and accurate copy of relevant portions of the Zoning Code are attached as Exhibit A.

33.    BayMark's opioid treatment office is a commercial business that will emit no dust fumes, smoke, odor, noise, vibration or danger to life property, safety, or health.

34.    There are numerous medical offices on similarly situated properties on Pearl Road and on West 130th within the City's Class "C" Commercial Zoning District.

35.    It is therefore beyond dispute that the City's Zoning Code expressly permits the use of the Property for an opioid treatment office.

**C.    BayMark Submits Its Proposed Site Plan to the City.**

36.    On or about October 13, 2017, a change of use application (the "Change of Use Application") and a preliminary site plan for BayMark's proposed parking lot were filed with the Planning Commission.

37.    On or about October 19, 2017, the City responded that the Director needed to know "the type of business that will be going into that location so we can determine if there will be sufficient parking" and further advised: "A letter to the Planning Commission explaining the nature of the business and [a] business plan would be sufficient."

38.    A few days later, the City Engineer provided initial comments on the preliminary site plan.  BayMark submitted two alternative preliminary site plans to the City in response, one with 25 parking spaces and one with 30 parking spaces.

39.    On or about November 20, 2017, the City Engineer completed a second

"preliminary review" of the two alternative preliminary site plans.  The City Engineer noted that the preliminary site plan would have to address certain layout issues including:

- adding a landscape area near an abutting property because he contended it was a residential property (the abutting property was actually a commercial property);

- adding a loading area;

- depicting parking spaces that were 9' X 20' in size; and

- illustrating the Property's dimensions, grading, and utilities on the plan.

The City Engineer also opined, in error, that more than 25 parking spaces would be required.

    **D.**    **BayMark Revises the Site Plan to Satisfy the Zoning Code Requirements and Address the City Engineer's Comments.**

40.    The Zoning Code only requires 24 parking spaces for BayMark's opioid treatment office based on the floor area of the building on the Property.

41.    Medical offices need only provide "5 [parking] spaces per 1,000 sq. ft." of "***floor area***."  Zoning Code §1187.06.

42.    "Floor area" is defined as:

> the **total usable floor area** of all the floors **excluding** areas devoted to mechanical equipment, stairways, elevators, restrooms, employees' lounges, public hallways and areas used for the storage and/or packaging of merchandise and supplies, provided, however, that such excluded area does not exceed twenty percent.

Zoning Code §1187.05(b) (emphasis added).

43.    The exterior dimensions of the BayMark's building on the Property is 6,000 gross square feet.  After applying the 20% exclusion for areas devoted to mechanical equipment, restrooms, employee lounge(s), public hallways and areas used for the

storage, there is at most, 4,800 square feet of "floor area."  Consequently, only 24 parking spaces are required by the Zoning Code.

44.    Accordingly, BayMark, responded to the City on or about December 20, 2017, explaining the nature of BayMark's business, that 25 parking spaces were sufficient, and that the abutting parcel was not zoned residential.  A true and accurate copy of the December 20, 2017 letter is attached as Exhibit B.

**E.    The City Arbitrarily Delays Consideration of BayMark's Application.**

45.    On or about January 16, 2018, the Director notified BayMark that it was required to provide responses to eight prompts, including among other things, providing yet another explanation of how BayMark proposed to use the Property.  Additionally, the Director required BayMark provide a detailed floor plan of the building's *interior* prepared by a state certified design professional – even though the Commission was only reviewing the preliminary site plan for *exterior* parking lot.

46.    BayMark responded on or about January 26, 2018, addressing each of the Director's prompts and enclosing a preliminary site plan.  BayMark noted that the requested *interior* floor plan prepared by a state certified design professional was not necessary and not required under either Chapter 1133 or 1187 of the Zoning Code. BayMark explained that interior plans would eventually be prepared in connection with a building permit for changes to the building's interior, but such plans were not necessary for approval of the site plan for the parking lot.  BayMark included a revised preliminary site plan that complied with all applicable requirements in the Zoning Code.

47.    Between February 2018 and May 2018, BayMark responded to still more letters, questions, and requests for information from the City.  In turn, the City continued to demand irrelevant information from BayMark, while simultaneously failing to provide

specific guidance as to what would be required of BayMark for the approval of its Change of Use Application and preliminary site plan.

48.     On or about May 18, 2018, the City agreed that BayMark's preliminary site plan dated April 27, 2018 was "in general conformance with the City of Parma Heights requirements...."  The City reiterated that it would nonetheless require BayMark to submit an *interior* floor plan prepared by a state certified design professional and requested the site plan also depict the location of drainage patterns; any new retaining wall locations, if any; approximate limits of parking expansion; and the location of new storm sewer infrastructure, if any.

49.     BayMark revised the preliminary site plan to add each of the elements requested by the City, and paid to have a state certified architect prepare an interior floor plan to demonstrate the preliminary site plan's compliance with the Zoning Code's parking requirements.  A true and accurate copy of the floor plan and information showing the square footage of excluded areas is attached as Exhibit C.

50.     BayMark submitted its site plan application ("Site Plan Application") and floor plan on or about May 31, 2018.   True and accurate copies of the Site Plan Application and Change of Use Application are attached as Exhibit D (together, the Site Plan Application and Change of Use Application are the "Applications").

**F.     The Planning Commission Randomly and Arbitrarily Refuses to Act Upon or Approve BayMark's Applications.**

51.     On July 2, 2018, the Planning Commission heard BayMark's Applications. During the meeting, representatives from BayMark presented 13 exhibits supporting approval of its two narrow Applications.  BayMark also answered numerous questions regarding various business, staffing, financial, and treatment issues.

12

52.     During the July 2 public hearing, the Commission read letters from "the community" that opposed BayMark's use based on unfounded fears and stigma against BayMark's clients suffering from OUD.

53.     Despite nine months of communications between the City and BayMark, and the information provided during the meeting concerning the narrow issues before the Commission, the Planning Commission nonetheless advised that it was at the very beginning of an "information gathering" phase.  Rather than voting on the Change of Use Application – resolving whether BayMark's opioid treatment office is a commercial business – or the Site Plan Application – approval of the parking lot's layout – the Planning Commission tabled both Applications "to gather further information regarding this business."[4]

54.     Despite knowing the nature of BayMark's business that would be used on the Property, the City wrote BayMark in a letter dated July 16, 2018, to request even more information, none of which was necessary to issue a decision on the two narrow issues before the Planning Commission and was not required by the Zoning Code.  The letter stated:

> The Planning Commission is requesting the following items to aid in its understanding of the new facility that BayMark is proposing.
>
> 1.     The name and addresses of BayMark's **eleven similar facilities in development throughout Ohio**, as well as the name and address of the existing facility that BayMark referred to during its Planning presentation.
>
> 2.     A **copy of the lease for the property** that was referenced in the presentation.
>
> 3.     A **copy of the study** referenced during the presentation **that led**

---

[4]  A copy of the Planning Commission's July 2, 2018 meeting minutes are available on the City's website at:  http://parmaheightsoh.gov/en-US/SYN//84593/EventTemplate.aspx.

**BayMark to this location**.

4.    A **breakdown of the payroll amounts at the proposed facility** that were cited during the presentation.

5.    An **estimate of the net profit tax chargeable to the proposed facility**.

Emphasis added.  The Commission's questions, on their face, establish that the Planning Commission knew and understood that BayMark's opioid treatment office is a permitted "commercial business."

55.    Through a letter dated July 20, 2018, BayMark provided its responses to each of the Planning Commission's requests and requested its Applications be included on the Commission's August 6, 2018 meeting agenda.

56.    The Commission did not place the Applications on its agenda.  Instead, on or about August 17, 2018, the Planning Commission sent BayMark a list of **41** additional questions for which the Commission purported to need answers "to aid in its understanding of the new facility that BayMark is proposing."  A true and accurate copy of the August 17, 2018 letter is attached as Exhibit E.

57.    As set forth in the August 17, 2018 letter, the questions directed to BayMark were irrelevant, motivated by the Planning Commission's continued discrimination and bias against persons with OUD, and well beyond the scope of the established procedures for considering a change of use application or an exterior, parking lot site plan.  By way of example only, the Planning Commission purported to need to know:

a.    The criteria "used for determining the facility proposed by BayMark Health Services should be located in Parma Hts. . . .  Please provide all available data utilized such as paramedic overdose run reports, emergency room reports from communities and hospitals within a 5 mile radius of the facility proposed by Baymark Health Services."

b.    "Of the facilities operated by Baymark how many have been subject

14

to criminal activity such as break ins of the facility?"

    c.  "Of the facilities operated by Baymark how many have been subject to criminal activities such other than [*sic*] break ins, such as petty theft, etc., on the grounds of the facility?"

    d.  "Have any of the facilities operated by Baymark ever been shut down by the local community due to being an attractive nuisance?  If yes, please provide details including the locations and dates."

    e.  "How many drug dependency treatment facilities exist within a ten (10) mile radius of the proposed location in Parma Hts.?  How many of these facilities are operated in conjunction with the major local healthcare providers . . .  How many of these facilities are operated by independent private licensed medical professionals, charities, state/local agencies, etc. . . . Please provide a map of the locations of all the drug dependency treatment facilities within ten (10) miles of the proposed facility."

58.    Upon information and belief, the Planning Commission has not required other similarly situated applicants to undergo such an "information gathering" phase before the Planning Commission would act upon their applications.

59.    Upon information and belief, the Planning Commission has not required similarly situated applicants to answer questions of this extent and nature in order to obtain a decision on a change of use application or a site plan application.

60.    On or about September 14, 2018, BayMark provided the Planning Commission with a written response providing answers to the Commission's multitude of requests.  BayMark again requested the Planning Commission to consider and vote on its Applications. A true and accurate copy of the September 14, 2018 letter is attached as Exhibit F.

61.    On or about October 23, 2018, the City arbitrarily contrived a new argument, claiming for the first time that BayMark's use was a "clinic" instead of a

"medical office" for purposes of calculating the requisite number of parking spaces.[5] However, the Zoning Code does not define either a "clinic" or a "medical office."  The City did not provide BayMark with any rationale or explanation for its new position.  As a result of this new interpretation, the City claimed that BayMark would need to provide additional parking spaces over-and-above the number of spaces required for a medical office.

62.    On or about December 28, 2018, the City claimed, in error, that it had yet to receive a site plan that complied with the Zoning Code and that such a site plan was required for Planning Commission to consider BayMark's Applications.

63.    The City and its Planning Commission also claimed that BayMark's responses to the City's litany of questions were "incomplete," such that the Planning Commission could not act upon BayMark's Applications.  The Planning Commission did not and has not acted upon BayMark's Applications.

64.    Yet, the City and its Planning Commission have had more than sufficient information to act upon the pending Applications since December 28, 2018.  The Planning Commission has instead continuously refused to act upon or hear the Applications in contravention to the City's established procedures.

**G.    BayMark Amends Its Lease and Supplements the Applications.**

65.    On or about June 5, 2020, BayMark and MKB entered into a First Amendment to Lease amending BayMark's Lease.  The amendment limits BayMark's use of the building on the Property to 4,800 square feet.

66.    On or about August 14, 2020, BayMark provided the City with its First

---

[5] A "clinic" must provide 1 parking space per 200 sq.ft. of the clinic's *gross floor area*.  Zoning Code § 1187.06.

Amendment to Lease to supplement its pending Applications.  A true and accurate copy of the August 14, 2020 letter is attached as Exhibit G.

67.     As a result of the amended lease, regardless of whether BayMark's use is characterized as a "medical office" or "clinic," the maximum number of parking spaces required by the Zoning Code for BayMark's use of the Property is 24 spaces.  *See* Zoning Code §1187.06.  The Site Plan Application provides 24 spaces.  (Ex. G at 9.)  BayMark requested to have its Applications as supplemented by the First Amendment to Lease, be approved at the September 8, 2020 Commission meeting.

68.     The Planning Commission cancelled its September 8 and October 5, 2020 Commission meetings.

69.     In a letter dated October 1, 2020, the City informed BayMark that "[a]t this time, there is a moratorium on planning activity in the region in question.  The City will notify you when the moratorium is lifted."

70.     On February 18, 2020, the City passed a moratorium on "the acceptance and approval by the City and City Planning Commission of **new applications** for development authorization and permits . . . ." for certain properties in the City.  A true and accurate copy of Ordinance No. 22-2020, adopting the moratorium, is attached hereto as Exhibit H.  On August 3, 2020, the City extended the moratorium for six additional months.  A true and accurate copy of Ordinance No. 105-2020, adopting the moratorium, is attached hereto as Exhibit I (together, Ordinance Nos. 22-2020 and 105-2020 are the "Moratoria").

71.     Importantly, neither moratorium was retroactive.  There is not any language in the Moratoria that applies a moratorium to the consideration of applications that were

previously pending before Planning Commission or concerning uses of property that were already vested by virtue of an applicant's prior filing of a zoning application.

72.     BayMark's Applications remained pending before the Commission prior to passage of the Moratoria.  By their plain terms, neither Moratoria apply to Baymark's pending Applications.  Moreover, the Property has been vacant for years, to the extent the City refuses to accept any application from BayMark changing the Property's use from its existing vacant use to any other use, deprives BayMark of all economic use of the Property of its rights under the Lease.

**H.     Despite the Moratoria, the Planning Commission Continues to Act Upon Other Applications and Seeks to Rezone BayMark's Property.**

73.     The Planning Commission met on November 2, 2020 and considered an application for approval of a self-storage business to be located at 7011 West 130th Street in the City, along with other matters.

74.     The Planning Commission met on December 7, 2020 and considered approval of an application for a new development at 5889 Stumph Road.  The Planning Commission also considered a separate rezoning recommendation that, if enacted, will rezone the Property to place additional restrictions on the future use, development, and operation of business on the Property, including among other restrictions, to prohibit the operation of an opioid treatment center on the Property.

75.     Planning Commission has met numerous times since the Moratoria were approved and acted upon other development applications.

76.     Without any legitimate basis, the Planning Commission has refused to act and continues to refuse to approve BayMark's Applications.

77.     It is now clear that it in light of the Defendants' continuing actions and

continued failure to act, it is futile to await the Planning Commission's final decision on the Applications.

78.    The Planning Commission's continued refusal to act upon and approve BayMark's Applications are a pretext for keeping BayMark's future clients out of the City, based on unfounded, irrational stereotypes and prejudices regarding disabled individuals with OUD.

79.    As a result of the Planning Commission's continuous refusal to act upon and approve BayMark's Applications, BayMark has incurred significant damages in excess of $75,000.

80.    On October 20, 2020, BayMark submitted a straightforward public records request containing eight requests.  Despite acknowledging receipt of the request, as of the date of this filing, the City has failed to produce any public records – not a single page.

81.    At all times relevant herein, Defendants acted under color of law.

82.    BayMark and the clients it will serve will suffer irreparable harm on account of discrimination due to disability. Absent relief from this Court, people suffering from OUD who would be treated at BayMark's Parma Heights office will suffer irreparable injury in that they will be unable to obtain medication assisted treatment for their OUD in Parma Heights. The patients will suffer from disease and injury, up to and including death, as well as mental illness, lost employment, lost sources of income, lost education, lost family stability, and loss of the possibility to live as law abiding productive members of society. They will additionally suffer stigma and discrimination on account of their disability.

83.    BayMark presently has no adequate remedy at law to redress the continuing

violation of its rights and the rights of disabled persons associated with BayMark.

## V.  CLAIMS FOR RELIEF

### COUNT ONE:
### VIOLATION OF THE
### AMERICANS WITH DISABILITIES ACT

84.     BayMark restates the foregoing paragraphs as if fully rewritten herein.

85.     Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.*, and its implementing regulations, 28 C.F.R. § 35.101 *et seq.*, prohibit a public entity from discriminating against qualified individuals with disabilities.  Under the ADA, "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

86.     The purpose of the ADA is to provide a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities and for the integration of persons with disabilities into the economic and social mainstream of American Life."  S.Rep. No. 116, 101st Cong., 1st Sess. at 2 (1989).

87.     Defendants are a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and (B).

88.     The ADA applies to zoning activities of public entities.

89.     The clients suffering or recovering from drug addiction who would be treated by BayMark in the City of Parma Heights are "qualified individual[s] with a disability" within the meaning of 42 U.S.C. §§ 12131(2) and 12210.

90.     BayMark's association with individuals who have disabilities qualifies it to vindicate Defendants' violations of the ADA.  *See, e.g.*, 28 C.F.R. §35.130(g); *MX Grp., Inc.*

*v. City of Covington*, 293 F.3d 326, 335 (6th Cir. 2002) (affirming ADA violation where City discriminated against methadone treatment provider because of its association with potential clients).

91.     Defendants discriminate against individuals who are disabled and suffering or recovering from drug addiction by treating those individuals distinctly differently than other individuals residing in the City who are in need of other types of medical treatments. Defendants' illegal actions and omissions concerning BayMark's operation of an opioid treatment office on the Property are motivated by stereotypes, prejudice, and unfounded fear.

92.     Defendants have violated, and continue to violate, the ADA by denying BayMark use of the Property as an opioid treatment office because of the known disability of BayMark's clients.  Defendants have violated and continue to violate the ADA by prohibiting BayMark from using the Property as an opioid treatment office through intentional discrimination against BayMark for its association with qualified individuals with disabilities.

93.     BayMark and its clients have been denied "the benefits of the services, programs or activities of a public entity," by reason of the clients' disabilities. 42 U.S.C. § 12132.

94.     As a result of the Defendants' violations of the ADA, BayMark has expended substantial time and financial resources, and has been deprived of the opportunity to conduct its business and to provide services to individuals with disabilities.

95.     Persons who are disabled and suffering or recovering from drug addiction are being deprived of their right to obtain treatment and recovery services from BayMark

at the Property due to the Defendants' illegal acts and omissions performed under cover of the unlawful enforcement of the City's zoning code.

96.    The Defendants' actions are illegal, violate the ADA, and constitute discrimination against disabled individuals for which BayMark is entitled to its damages, reasonable attorney's fees, costs and such other relief as this Court deems necessary.

**COUNT TWO:**
**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**

97.    BayMark restates the foregoing paragraphs as if fully rewritten herein.

98.    Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), prohibits a program or activity that receives federal funds from discriminating against individuals with disabilities.  Under the Rehabilitation Act, no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

99.    The City distributes or receives federal financial assistance.  The City is therefore "a program or activity" under the Rehabilitation Act.  29 U.S.C. § 794(b).

100.    The clients who would be treated by BayMark are "qualified individual[s] with a disability" within the meaning of 29 U.S.C. § 705(20).

101.    Defendants' actions and omissions violate the Rehabilitation Act by prohibiting use of the Property as an opioid treatment office due to Defendants' discrimination against individuals with disabilities.  Defendants, through their actions and omissions, have denied and continue to deny BayMark and its clients benefits and services at the Property due to BayMark's clients' disabilities.

102.    As a result of the City's violations of the Rehabilitation Act, BayMark has

expended substantial time and financial resources, and has been deprived of the opportunity to conduct its business and to provide services to individuals with disabilities.

103.    Persons who are disabled and suffering or recovering from drug addiction are being deprived of their right to obtain treatment and recovery services from BayMark at the Property due to the Defendants' illegal acts and omissions performed under cover of the unlawful enforcement of the City's zoning code.

104.    The Defendants' actions are illegal, violate the Rehabilitation Act, and constitute discrimination against disabled individuals for which BayMark is entitled to its damages, reasonable attorney's fees, costs and such other relief as this Court deems necessary.

**COUNT THREE:**
**42 U.S.C. § 1983 – DEPRIVATION OF PROPERTY INTEREST**
**WITHOUT DUE PROCESS OF LAW**
**(PROCEDURAL DUE PROCESS)**

105.    BayMark restates the foregoing paragraphs as if fully rewritten herein.

106.    Defendants have deprived BayMark of its constitutionally protected property interests under color of law without due process of law in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution, in that:

A.    BayMark has a constitutionally protected property right in the Property's existing Class C Commercial Zoning District.

B.    BayMark has a constitutionally protected property right to the use of its Property for "[a]ny commercial business not injurious to adjacent premises or its occupants thereof by reason of the emission of dust, fumes, smoke, odor, noise, vibration or danger to life, property, safety or health." Zoning Code § 1181.01(d) (Permitted

23

Uses).

C. BayMark has a constitutionally protected property right to the use of its Property as an opioid treatment office.

D. BayMark's property rights are of a type protected by the Fifth and Fourteenth Amendments to the United States Constitution.

E. BayMark's use of its Property complies with all of the legitimate zoning standards adopted by the City.

F. BayMark possesses the right to be heard on its Applications.

G. Defendants have repeatedly refused to hear and consider the Applications.

H. While the Applications have remained pending, the City arbitrarily and retroactively imposed a Moratoria against any consideration of the Applications or BayMark's use of the Property.

I. There are no available remedies that will compensate BayMark for the deprivation of its vested rights.

107. As a result, BayMark has suffered and will continue to suffer the deprivation of its vested rights under the United States and Ohio Constitutions.

108. BayMark is therefore entitled to its damages, reasonable attorney's fees, costs and such other relief as this Court deems necessary.

**COUNT FOUR:**
**42 U.S.C. § 1983 – DEPRIVATION OF PROPERTY INTEREST**
**WITHOUT DUE PROCESS OF LAW**
**(SUBSTANTIVE DUE PROCESS)**

109. BayMark restates the foregoing paragraphs as if fully rewritten herein.

110. The City has deprived BayMark of its property interests under color of law without due process of law in violation of the Due Process Clauses of the Fifth and

24

Fourteenth Amendments of the United States Constitution and Article I, Section 16 of the Ohio Constitution, in that:

    A.   BayMark has a constitutionally protected property right in the Property's existing Class C Commercial Zoning District.

    B.   BayMark has a constitutionally protected property right to the use of its Property for "[a]ny commercial business not injurious to adjacent premises or its occupants thereof by reason of the emission of dust, fumes, smoke, odor, noise, vibration or danger to life, property, safety or health." Zoning Code § 1181.01(d) (Permitted Uses).

    C.   BayMark has a constitutionally protected property right to the use of its Property as an opioid treatment office.

    D.   BayMark's opioid treatment office complies with all of the legitimate zoning standards adopted by the City.

    E.   BayMark's property rights are of a type protected by the Fifth and Fourteenth Amendments to the United States Constitution.

    F.   Defendants have arbitrarily and capriciously refused to permit the use of the Property as an opioid treatment office.

    G.   Defendants have arbitrarily and capriciously subjected BayMark's Applications and use of the Property retroactively to the Moratoria.

    H.   Defendants refusal to permit BayMark to use the Property as an opioid treatment office is arbitrary, unreasonable, and does not bear a substantial relationship to the public health, safety, morals, or general welfare.

   111.   As a result, BayMark has suffered and will continue to suffer the deprivation

of its vested rights under the United States and Ohio Constitutions.

112.    BayMark is therefore entitled to its damages, reasonable attorney's fees, costs and such other relief as this Court deems necessary.

## COUNT FIVE:
## 42 U.S.C. § 1983 – DENIAL OF EQUAL PROTECTION

113.    BayMark restates the foregoing paragraphs as if fully rewritten herein.

114.    BayMark has been subjected to unequal treatment of the law under color of law in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution, in that:

   A.   The City routinely permits similarly situated properties and applicants to use property consistent with the uses permitted by the City's zoning code.

   B.   BayMark's use of the Property for an opioid treatment office and its Applications complied with all of the legitimate zoning standards set by the City.

   C.   Defendants have arbitrarily and unreasonably prevented BayMark from using the Property for an opioid treatment office and refused to approve the Applications.

   D.   BayMark has been deprived of its property interests by continued discriminatory treatment in comparison with other similarly situated persons.

   E.   Defendants have no rational basis for the discriminatory treatment of BayMark.

115.    As a result, BayMark has suffered and will continue to suffer from Defendants' unequal treatment of the law.

116.    BayMark is therefore entitled to its damages, reasonable attorney's fees, costs and such other relief as this Court deems necessary.

## COUNT SIX:
## 28 U.S.C. § 2201(a) - DECLARATORY JUDGMENT

117.    BayMark restates the foregoing paragraphs as if fully rewritten herein.

118.    An actual controversy exists between the parties.

119.    The parties are entitled to a declaration of their rights and liabilities.

120.    The Property is expressly permitted to be used for any "commercial business not injurious to adjacent premises or its occupants thereof by reason of the emission of dust, fumes, smoke, odor, noise, vibration or danger to life, property, safety or health."

121.    BayMark's proposed opioid treatment office is a commercial business not injurious to adjacent premises or its occupants thereof by reason of the emission of dust, fumes, smoke, odor, noise, vibration or danger to life, property, safety or health.

122.    Plaintiffs are entitled to a declaration that its proposed opioid treatment office is a permitted use of the Property.

123.    Plaintiffs are entitled to a declaration that regardless of whether BayMark's use is characterized as a medical office or a clinic, 24 parking spaces are a sufficient number of parking spaces under the City's Zoning Code § 1187.06.

124.    Plaintiffs contest whether the Moratoria applies to the Applications.

125.    The Applications were submitted prior to the City's enactment of the Moratoria.  The Planning Commission did not act upon the Applications.

126.    By the Moratoria's plain terms, it does not apply to the Change of Use Application or Site Plan Applications filed with the City prior to enactment of the Moratoria.

127.    Plaintiffs are therefore entitled to a declaration that the Applications are exempt from the Moratoria.

## VI.     <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs BayMark Health Services of Ohio, Inc. and MKB Holdings, LLC seek:

A. A declaration that:

    i. BayMark's proposed opioid treatment office is a permitted use of the Property.

    ii. Twenty four (24) parking spaces are a sufficient number of parking spaces for the operation of an opioid treatment office on the Property.

    iii. The Applications are exempt from the Moratoria.

    iv. Defendants' acts and failures to act to prohibit the use of the property located at 6700 Pearl Road in the City of Parma Heights, Ohio for an opioid treatment office are unlawful.

B. Preliminary and permanent injunction enjoining Defendants, their successors, agents, employees, and all persons working in concert or participation with them, from prohibiting the use of the property located at 6700 Pearl Road in the City of Parma Heights, Ohio as an opioid treatment office or otherwise interfering with the use and possession of 6700 Pearl Road as an opioid treatment office.

C. Compensatory damages in excess of $75,000.

D. Attorney's fees and costs pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12133, and 29 U.S.C. § 794a.

E. Any other declarative, injunctive, or other equitable or further relief this Court deems just and appropriate.

Respectfully submitted,

/s/ *Joseph R. Miller*

Joseph R. Miller (0068463) (Trial Attorney)
Christopher L. Ingram (0086325)
Arryn K. Miner (0093909)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Phone:  (614) 464-6400
Fax:      (614) 719-4630
jrmiller@vorys.com
clingram@vorys.com
akminer@vorys.com

*Counsel for Plaintiffs*
*BayMark Health Services of Ohio, Inc. and*
*MKB Holdings, LLC*

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury on all matters triable to a jury.

/s/ *Joseph R. Miller*
Joseph R. Miller (0068463)

*Counsel for Plaintiffs*

29